## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### BEAUFORT DIVISION

| | |
|---|---|
| Bank of Newington,<br><br>                Plaintiff,<br><br>   v.<br><br>Pleasant Point Plantation Property Owners Association, Inc.; Ann Amacher; Susan Hinrichs; Julie Whitmore; Carl Dilorio; Dana Anthony; Christian Sherbert; John Farrell; Doug Massalon; Mike Rieger; Jeanne Willingham; John Nesvold; and John and Jane Does 1–10,<br><br>                Defendants. | Civil Action No. 9:25-cv-03797-RMG<br><br><br>**COMPLAINT** |

Plaintiff Bank of Newington ("Bank" or "Plaintiff") by and through its undersigned attorneys, hereby files this Complaint against Defendants Pleasant Point Plantation Property Owners Association, Inc. (the "Association"), Ann Amacher, Susan Hinrichs, Julie Whitmore, Carl Dilorio, Dana Anthony, Christian Sherbert, John Farrell, Doug Massalon, Mike Rieger, Jeanne Willingham, John Nesvold, and John and Jane Does 1–10 (collectively "Defendants") and alleges:

### BACKGROUND

Plaintiff Bank of Newington acquired a tract of land in Beaufort County, South Carolina, with the plan to develop the property into townhomes. Indeed, more than twenty years ago, the Beaufort County Development Review Team found that the townhome development plan for the property was in complete compliance with Beaufort County's Zoning and Development Standards Ordinance—a determination which

Beaufort County has reiterated on *multiple* occasions over the course of many years. Plaintiff acquired the property with the intent to invest significantly in the design and construction of the townhome community.  In rapidly growing Beaufort County, such housing is direly needed by the burgeoning workforce, which serves the multi-billion-dollar tourism industry in the area.

Unfortunately, as Plaintiff has learned to its great detriment, there is a *reason* that—despite County approval of plans—the property has never been developed.  That *reason* is the long-term, ongoing, improper actions of Defendants, including Defendant Pleasant Point Plantation Property Owners Association, Inc. ("Association") and certain of its members, acting each individually and on behalf of the corporation, in bad faith and unreasonably, to thwart any and all construction on the property.  Defendants have set up an "architectural review committee," which has focused for twenty years on its objective of denying every application for construction on the property which crosses its desk.  Developer after developer after developer has submitted County-compliant plans to this "architectural review committee," and the committee has denied them, every time.

Defendants are financially motivated to abuse their power to impede construction. In 2004, when the County first approved the townhome development plan, the County also approved a plat which subdivided the property into twenty-six lots.  The Association is and has been collecting assessments on those twenty-six vacant lots for the past twenty years.  Ostensibly, assessments are imposed by the Association for the purpose of maintaining recreational amenities and other infrastructure . . . **which have never been used or enjoyed by these twenty-six dormant lots on which the Association has thwarted**

*all construction*.  Those 26 vacant lots are a "cash cow" from which the Association demands dues but provides no amenities, services, or benefits.

Plaintiff first submitted architectural and design plans to the Defendant Association in June of 2024.  Its plans were summarily rejected by the Defendants, for arbitrary and capricious reasons with no basis in any recorded instrument legitimately restricting Plaintiff's property.  Plaintiff diligently made changes suggested by the Defendants and tried again.  And again.  And again.  Each of Plaintiff's submissions, although in compliance with the zoning ordinance and the community covenants, was shot down by Defendants, in bad faith, unreasonably, and for superficial, extra-contractual, unfounded reasons.  Defendants have effectively deprived Plaintiff of the use of its property, leaving Plaintiff to hold land it cannot develop.  All the while, the Association demands Plaintiff pay assessments for amenities its lots can never use.

Plaintiff is filing this lawsuit because the gig is up.  This Court should not tolerate bad faith, unreasonable, improperly financially motivated behavior from a nonprofit, mutual benefit corporation and certain of its members.

## PARTIES

1. Plaintiff Bank of Newington ("Plaintiff") is a Georgia company which owns and holds title to the subject property in Beaufort County, South Carolina. Its main office is located at 224 Walton Street, Newington, GA 30446. The bank was established in 1919 in Newington and remains headquartered there, with additional branches in Sylvania and Springfield, Georgia.

2. Defendant Pleasant Point Plantation Property Owners Association, Inc. (the "Association") is a non-profit corporation incorporated in South Carolina and based in Beaufort, South Carolina. The community itself is located on Lady's Island, which is part of the greater Beaufort, South Carolina area. The Association manages the Pleasant Point Plantation residential community, which features amenities such as a golf course, clubhouse, and various natural areas.

3. Defendant Ann Amacher is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's architectural review committee at pertinent times discussed below.

4. Defendant Susan Hinrichs is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's architectural review committee at pertinent times discussed below.

5. Defendant Julie Whitmore is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's architectural review committee at pertinent times discussed below.

6. Defendant Carl Dilorio is a South Carolina resident and resident of Beaufort County,

South Carolina. This defendant was a member of the Association's architectural review committee at pertinent times discussed below.

7. Defendant Dana Anthony is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's architectural review committee at pertinent times discussed below.

8. Defendants Ann Amacher, Susan Hinrichs, Julie Whitmore, Carl Dilorio, and Dana Anthony sometimes are collectively referred to herein as "ARC Members."

9. Defendant Christian Sherbert is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's board of directors and appeal committee at pertinent times discussed below.

10. Defendant John Farrell is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's board of directors and appeal committee at pertinent times discussed below.

11. Defendant Doug Massalon is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's board of directors and appeal committee at pertinent times discussed below.

12. Defendant Mike Rieger is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's board of directors and appeal committee at pertinent times discussed below.

13. Defendant Jeanne Willingham is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's board of directors and appeal committee at pertinent times discussed below.

14. Defendant John Nesvold is a South Carolina resident and resident of Beaufort County, South Carolina. This defendant was a member of the Association's board of directors and appeal committee at pertinent times discussed below.

15. Defendants Farrell, Massalon, Nesvold, Rieger, Sherbert, and Willingham sometimes are collectively referred to herein as "Board Members."

16. John and Jane Does 1–10 are South Carolina residents and residents of Beaufort County, South Carolina. These defendants, who will be identified in discovery, were members of the Association's architectural review committee and/or board of directors at pertinent times discussed below.

## JURISDICTION AND VENUE

17. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and defendants and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim arose in this district, including that the wrongful plan denials were issued to Plaintiff in this district, and the real property that is the subject of this lawsuit is located in this district.

## FACTS

19. Plaintiff brings this lawsuit to require Defendants to honor their contractual obligations, as well as their duties, to Plaintiff, and to compensate Plaintiff for the damages that they have caused.

20. Plaintiff owns certain real property in Beaufort County, known as the Twin Oaks development at Pleasant Point, Beaufort, South Carolina ("Twin Oaks" or the "Property").

21. The Property is a portion of the real estate development known as Pleasant Point Plantation.

22. The Twin Oaks Property is depicted on a plat recorded with the Office of the Beaufort County Register of Deeds in Plat Book 00120 at Page 0181, a true and correct copy of which is attached hereto as Exhibit 1.

23. A portion of Exhibit 1, depicting the Twin Oaks Property is below:



24. Twin Oaks consists of 26 lots that are zoned only for use as townhomes.

25. Plaintiff Bank of Newington owns each of those lots.

26. Plaintiff Bank of Newington is a member of the Association, and it holds a membership for each of those 26 lots.

27. Plaintiff Bank of Newington has been a member of the Association at all times relevant to this lawsuit.

28. The Association is responsible for reviewing and approving development applications at Pleasant Point, including for the Twin Oaks lots.

29. The application and approval procedure for new construction should be a simple and straightforward process, based on reasonable, rational requirements, and good faith.

30. The Association owes fiduciary duties to its members.

31. The Board Members each owe fiduciary duties to the Association's members.

32. The Association and the Board of Directors claim that they have delegated their duties for reviewing and approving development applications to an architectural review committee ("the ARC").

33. The Association and Board of Directors are required to act in accordance with South Carolina law, including the South Carolina Nonprofit Corporation Act.

34. The Association's board of directors is responsible for appointing fair and impartial members of the ARC.

35. The Association's board of directors is responsible for the actions of the ARC.

36. At all times relevant to this lawsuit, no member of the Association's board of directors was a member of the ARC.

37. In May of 2024, the Association communicated to Plaintiff that it would not consider an application unless Plaintiff paid $119,301.00 for assessments charged to *prior*

owners of the Twin Oaks property.

38. Plaintiff paid the money.

39. In June 2024, Plaintiff submitted an application and plans to the Association, via its ARC, for construction of townhomes on the lots at Twin Oaks.

40. The members of the ARC each owe a fiduciary duty to the Association members.

41. The ARC does not have unlimited discretion.

42. Members of the ARC do not have unlimited discretion.

43. Members of the ARC must review applications reasonably and in good faith.

44. The Association owes a duty of good faith and fair dealing to Association members.

   A. The Board Members each owe a duty of good faith and fair dealing to Association members.

   B. Members of the ARC each owe a duty of good faith and fair dealing to Association members.

   C. If members of the ARC do not review applications in good faith, they have breached their duties.

45. The Association and ARC purport to have a specific process for reviewing applications and submissions. However, in practice they do not follow their stated process and deviate from it when it serves their purpose.

46. In their dealings with Plaintiff's application, the Association and members of the ARC would "go dark" regularly and fail to respond.

47. The Association and members of the ARC also regularly "misplaced" Plaintiff's submitted materials or claimed to be unaware of them.

48. Certain members of the ARC indicated that they did not like townhomes in general and did not want them in the area.

49. Unfortunately, it became clear that the ARC was a "kangaroo court" that would stall and ultimately disapprove the Twin Oaks project.

50. After multiple, repeated follow-ups and requests by Plaintiff about the status of its application, the Association, via its ARC, *finally* reviewed conceptual plans and provided feedback.

51. In giving the feedback, the members of the ARC cited numerous alleged, perceived deficiencies, including concerns about the appearance (so-called "cookie cutter" designs), the interior garage size, off-road parking, elevations, HVAC units, and the absence of elevators (!).

52. While some of the comments were constructive (off-road parking, etc.) others were well beyond the purview of the ARC members, including demands regarding the interiors of the buildings.

   A. Members of the ARC have no jurisdiction or say over the interior of new construction.

   B. The Board Members have no jurisdiction or say over the interior of new construction.

   C. The Association has no jurisdiction or say over the interior of new construction.

53. Even so, in the spirit of cooperation, Plaintiff revised the designs several times, at great expense.

54. Each time Plaintiff revised its designs in an effort to address alleged deficiencies

perceived by the ARC, it cost the Plaintiff time and money, including revision of plans and drawings, compliance with applicable codes, addition of new materials and features, among other things.

55. Plaintiff also met on several occasions with members of the ARC in an effort to address those individuals' perceived concerns, many of which were not based on any legitimate requirement on the part of Plaintiff.

56. Plaintiff also met at least once with one member of the Association board of directors, Christian Sherbert, who also identified perceived concerns with Plaintiff's plans, many of which were not based on any legitimate requirement on the part of Plaintiff.

57. Plaintiff continued to change its designs and plans to address the perceived concerns raised by the ARC and Mr. Sherbert.

58. For example, Plaintiff revised each design to create separate exterior elevations with different trim details for each building.  Plaintiff provided at least three different options in order to address all concerns regarding the exteriors.  Each time Plaintiff changed the design in an effort to resolve the ARC and Mr. Sherbert's "concerns," members of the ARC and Mr. Sherbert would raise *new* concerns.  It became a game of "Whac-A-Mole," where each time Plaintiff made the requested changes, the Association and ARC made new demands unrelated to the changes and untethered to any valid covenant or restriction on the property.

59. After several meetings and rounds of submissions, it became clear that the Association and members of the ARC would *never* approve the plans—they were always going to find reasons to deny it.

60. This was consistent with past submissions by other developers to the Association and ARC—the POA, its ARC, and its board always found a "reason" to deny submissions.

61. Finally—*finally*—the ARC deemed the exteriors to be compliant, writing to Plaintiff on November 22, 2024, that:

> I. ***Exterior Renderings***: We believe the updated renderings are in compliance with and offer a "coherent and harmonious" appeal as stated in the Pleasant Point Guidelines and Standards.

62. Exhibit 2 ("Exterior Approval Letter") is a true and correct copy of that letter, which was issued by the ARC on behalf of the Association.

63. The Exterior Approval Letter does articulate other concerns such as parking and waste disposal, but the ARC's primary concern from past meetings and submissions—exterior appearance—had been satisfied.

64. On December 6, 2024, Plaintiff responded to the remaining points in the Exterior Approval Letter and confirmed that the exteriors had been approved:

> **I. Exterior Renderings**
>
> Thank you for approving these. Please see the attached submittal regarding elevations and other changes requested by the ARC.

65. Exhibit 3 ("Confirmation Letter") is a true and correct copy of that letter, which was received by the ARC on behalf of the POA.

66. The ARC and Association did not object to the Exterior Approval Letter or to the Confirmation Letter.

67. As such, the parties agreed that the exteriors were in compliance with all requirements.

68. In December 2024, a director of the Association, Mr. Sherbert, met surreptitiously with personnel in the Beaufort County Planning Department to attempt to influence changes to the County Code affecting the development of Twin Oaks.

69. Defendant Sherbert's intent was to sabotage the development so that the Twin Oaks project could not be built.

70. The Beaufort County official explained to the Association's director, Defendant Sherbert, that the only structures that could legally be built on the lots were townhomes.

71. The Beaufort County official refused the Association board member's attempts to alter its determination.

72. At the time of that meeting between Defendant Sherbert and Beaufort County, Plaintiff was a member of the Association, and Association board members owed Plaintiff a fiduciary duty.

  A. At the time of this meeting, Plaintiff had been paying dues to the Association, amounting to more than $119,301.00.

73. The Association and members of the ARC continued to stall Plaintiff.

74. Ultimately, Plaintiff had to demand that the ARC issue a decision on the application, which the ARC had stalled for many months.

75. In response, the Association demanded that Plaintiff pay the Association another $118,500 before it would even schedule a final meeting on the application.

  A. This was in addition to the Association demanding that Plaintiff bring all previous dues current from *previous* owners of the property.

76. Plaintiff paid the money.

77. Finally, the ARC met on February 6, 2025, to issue its ruling on the application.

78. The ARC Members were present at that meeting.

79. The ARC and ARC Members denied the application because, they claimed, they did not like the exterior appearance of the plans.

80. The exterior appearance was the same as approved in the ARC's Exterior Approval Letter and confirmed by Plaintiff in its Confirmation Letter.

81. Later, the ARC Members confirmed their action in an undated letter ("ARC Letter") issued on February 20, 2025. A true and correct copy is attached as Exhibit 4.

82. The ARC Letter listed four grounds for denial, only one of which had been articulated during the February 6, 2025 hearing.

   A. First, the ARC Members did not like the exterior appearance. This matter had already been extensively discussed and approved by the ARC, as discussed above.

      1. This was an example of gross negligence and/or bad faith by the ARC Members.

   B. Second, the ARC Members demanded—for the first time—that the townhomes must have a minimum of 1,500 heated square feet on the first floor.

      1. This (a) would be physically impossible given the lot sizes (which the ARC *knew*), and (b) was a deliberate misrepresentation of the Association's governing documents—ARC's claim that the Twin Oaks project was not "multifamily." In fact, previous ARC minutes had specifically stated that the project was indeed "multifamily."

2. This was another example of gross negligence and/or bad faith by the ARC Members.

C. Third, the ARC Members stated that the plans did not show enclosures for garbage cans.

   1. This was simply incorrect—garbage can enclosures were included in the plans.

   2. This was another example of either gross negligence or bad faith by the ARC Members.

D. Fourth, the ARC Members did not approve of the *type of people* who ARC Members decided might purchase the dwellings. The ARC Members articulated a distaste for possible "renters" whom they speculated would not "upkeep" the property.

   1. This was a theme that had been alluded to by the ARC throughout the process—its members' anxiety that types of people whom the ARC apparently looked down upon might someday live in the neighborhood.

   2. The ARC Members have no jurisdiction or purview over what "types of people" may buy or live in property.

   3. This was another example of bad faith and unreasonable behavior by the ARC Members.

83. Throughout the ARC process, the ARC Members and certain Board Members violated their legal responsibilities. As discussed above, this included acting in bad faith and with gross negligence, making personally-motivated decisions without adequate information and/or in violation of the Association governing documents, failing to meet their duty of care, and failing to meet their duty of obedience by acting outside

of the Association's scope of authority and/or violating the governing documents. These actions render the ARC Members and certain Board members personally liable, as well as render the Association liable.

84. Plaintiff timely appealed the ARC Letter. A true and correct copy of the appeal document is attached as <u>Exhibit 5</u> and is incorporated herein.

85. The Association's governing documents provide a specific, mandatory process for appeals from the ARC.

86. That specific, mandatory process includes this requirement (emphasis added):

> The Appeals Committee will conduct an appeal hearing where **both the ARC and the Appellant** may present witnesses, documents, and other evidence prior to the Appeals Committee decision.

87. Those rules contemplate that both the ARC and the Appellant (here, Plaintiff) would present their respective sides of the issues to the Appeal Committee.

88. The Appeals Committee held the hearing on March 26, 2025.

89. The Board Members were the members of the Appeals Committee.

90. The chairperson of the Appeals Committee was Defendant Sherbert, who is mentioned above.

91. Nobody from the ARC showed up.

92. Nobody from the ARC presented any witnesses, documents, or other evidence.

93. Plaintiff presented multiple witnesses, documents, and other evidence.

94. Plaintiff's evidence included:

A. A binder of documents with plans and correspondence detailing the history of the project and the changes made at the bequest of the ARC.

    B.  Enlarged plans and diagrams of the project, including those previously approved by the Exterior Approval Letter and confirmed by the Confirmation Letter.

    C.  Posterboards and architectural renderings of the project.

    D.  Color samples and materials to be used for the project, which had been previously approved by the ARC.

95.  Plaintiff also presented testimony from several witnesses, including:

    A.  The Chairperson of the Bank of Newington.

    B.  The owner of the developer, Lopez Investments.

    C.  The architect who designed the project.

96. Nobody from the ARC responded in any way—either before, during, or after the appeal hearing.

97. Defendant Sherbert and the Appeals Committee denied Plaintiff's appeal.

    A.  The denial was riddled with inconsistencies, backtracking, mistakes, and new "concerns."

    B.  As just one example, in the appeal denial, Mr. Sherbert stated that a reason for the denial was that the Twin Oaks development "**cannot** be considered '**multi-family**' pursuant to the Standards" (and, therefore, must have 1,500 square feet on the first floor—an impossibility).

    C.  Yet in his ARC committee report dated November 13, 2024, Mr. Sherbert had reported to the Association board of directors that he and the ARC had "been engaged in working with the **multifamily** unit" development at Twin Oaks.

    D.  Thus, in internal Association meetings Mr. Sherbert, the ARC, and Board

Members acknowledged that the plans met the requirements, but they nonetheless denied Plaintiff's application and appeal for reasons they knew to be false.

E. This was another example of unreasonableness, bad faith, and/or gross negligence by the Board Members.

98. Throughout the ARC and appeal process, the Board Members violated their legal responsibilities. As discussed above, this included acting unreasonably, in an arbitrary and capricious manner, in bad faith, and with gross negligence, making decisions without adequate information and/or in violation of the Association governing documents, failing to meet their duty of care, and failing to meet their duty of obedience by acting outside of the POA's mission and/or violating the governing documents. These actions render the Board Members liable personally, as well as render the Association liable.

* * *

99. Today, the Twin Oaks Property sits vacant.

100. The Association continues to demand payment of dues and assessments for the 26 vacant lots.

101. Plaintiff's Twin Oaks project has been blocked by the ARC Members, the Board Members, and the Association.

102. The ARC Members', Board Members', and Association's improper actions have rendered the Twin Oaks Property unusable and undevelopable.

103. Plaintiff's costs and damages mount with every passing day, due to the ARC

Members', Board Members', and Association's unlawful actions.

### FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment and Permanent Injunction)

104.    Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth

herein.

105.    This claim is brought pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules

of Civil Procedure and other applicable law.

106.    The Association is a nonprofit corporation organized and existing under South

Carolina law.

107.    This claim is brought pursuant to the South Carolina Nonprofit Corporation Act

("Nonprofit Act"), S.C. Code § 33-31-101 *et seq*.

108.    The Nonprofit Act prohibits a nonprofit corporation from delegating the

corporation's decision-making authority to a "committee" unless at least two

directors of the corporation sit on that committee, as further set forth in S.C. Code §

33-31-825.

   A.  As set forth in detail above, the purported architectural review "committee" at

       Plantation Point is not comprised of any directors of the nonprofit corporation.

   B.  Because no directors sit on the committee, the ARC is unlawful and lacks authority

       to take action on behalf of the POA, including but not limited to the authority to

       deny Plaintiff's application and/or demand changes to it.

   C.  Plaintiff seeks a declaratory judgment from this Court that the purported "ARC"

       lacks authority to act on behalf of the corporation, and that the Directors' actions

in appointing members to the committee and in purporting to delegate their authority to the committee were *ultra vires*.

D. Plaintiff seeks a declaratory judgment from this Court that, because the members of the purported "ARC" are not directors of the corporation, their actions in denying the Plaintiff's application and in demanding (costly) changes to it were undertaken personally and individually, and, as such, they are personally and individually liable for the damages caused by their actions.

E. Plaintiff seeks a permanent injunction against any further action in the community by the purported Architectural Review Committee.

109. Further, and regardless of the validity of the Architectural Review Committee, the governing documents of the Association must be construed in the least restrictive manner, and in favor of the free use of Plaintiff's property.

A. South Carolina law prohibits the Association from arbitrarily and capriciously denying the Plaintiff's applications to build on the Twin Oaks Property.

B. South Carolina law prohibits the Association from unilaterally imposing architectural guidelines and processes that are more restrictive that those set forth in the community's covenants.

C. South Carolina law prohibits the Association from unreasonably denying the Plaintiff's applications to build on the Twin Oaks Property.

D. South Carolina law prohibits the Association from continuously denying any and all applications to build on the Twin Oaks Property, and from intentionally and unreasonably keeping the property unbuildable in perpetuity.

E.   Plaintiff respectfully requests a judgment from this Court so declaring.

110.   Under the Declaratory Judgment Act and other applicable law, the Court may make such award of costs as it deems equitable and just.

**FOR A SECOND CAUSE OF ACTION**
**(Breach of Governing Documents)**
**(Against all Defendants)**

111.   Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

112.   The governing documents of the Association are in the nature of a contract between Plaintiff and each Defendant.

113.   Defendants have each, individually and collectively, breached the governing documents, including by purporting to require Plaintiff to revise its construction plans to meet demands that are not a part of the contract, and by denying the Plaintiff's application for arbitrary, capricious, and financially-motivated reasons, as set forth above.

114.   Moreover, the corporation's governing documents include an implied covenant of good faith and fair dealing.

115.   Defendants have breached the implied covenant of good faith and fair dealing, including by making unreasonable demands of Plaintiff which have been untethered from any actual contractual condition, by treating Plaintiff differently than Defendants treat other similarly situated persons, and by otherwise acting in bad faith as set forth above.

116.   Defendants' actions are in breach of the contract.

117.   Defendants' breaches have caused damages to the Plaintiff, which are ongoing.

### FOR A THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (Against the Defendant Directors of the Association)

118.   Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

119.   The Association's board of directors, and its members, owe fiduciary duties to the Plaintiff, which is a member of the Association.

120.   As further set forth herein, the Association's board of directors, and its members, have breached their fiduciary duties to the Plaintiff by, *inter alia*:

A.   Failing to comply with South Carolina's Nonprofit Corporation Act, to the detriment of the Plaintiff;

B.   Failing to abide by and to enforce the governing documents, as written;

C.   Actively seeking to thwart the Plaintiff's use of its Property;

D.   Willfully misconstruing the governing documents to work harm against the Plaintiff;

E.   Acting in bad faith in their own self-interest, including by making what should be objective decisions based on subjective criteria, including a dislike of the types of people who might one day live in Plaintiff's townhomes.

F.   Otherwise acting unreasonably and in bad faith with an intent to cause damage to Plaintiff.

121.   Plaintiff has suffered damages proximately resulting from the wrongful conduct of the Defendant Directors.

122.    Plaintiff is entitled to an award of actual, consequential, special, and punitive

damages, as well as its attorney's fees and the costs of this action.

### FOR A FOURTH CAUSE OF ACTION
#### (Negligence and Gross Negligence)
#### (Against the Association, the Defendant Directors of the Association
#### and each individual member of the ARC, personally)

123.    Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth

herein.

124.    Defendant Association owes a duty to the individual members of the Association,

including Plaintiff, to act reasonably in its management of the affairs of the

Association, and in accordance with the governing documents, and with state law.

125.    Defendant Directors of the Association each owe a duty to the individual members

of the Association, including Plaintiff, to act reasonably and in good faith in their

management of the affairs of the Association, and in accordance with the governing

documents, and with state law.

126.    Each individual member of the ARC undertook and owes a duty to the individual

members of the Association, including Plaintiff, to act reasonably in their

management of the affairs of the Association, and in accordance with the governing

documents, and with state law.

127.    Including as set forth above, Defendants have acted negligently and in breach of

their duties to Plaintiff, including by:

A.  Failing to follow the governing documents,

B.   Misconstruing the governing documents,

C.  Denying the Plaintiff's applications for construction, based on unreasonable, arbitrary, and capricious factors,

D.  Selectively enforcing the governing documents against Plaintiff, only, to exclude construction that is otherwise permitted to other members,

E.  By other negligent acts and omissions that will be realized through discovery.

128.  Plaintiff has suffered and will continue to suffer substantial damages directly and proximately resulting from the negligence of these Defendants.

129.  To the extent that the Defendant ARC Members lacked authority to make corporate decisions because the committee is not comprised of directors pursuant to the Nonprofit Corporation Act, the Defendant ARC Members are each individually and personally liable for their negligent acts.

130.  As set forth herein, Defendants have acted willfully, wantonly, and with reckless disregard for the rights of the Plaintiff.

131.  Plaintiff is entitled to actual and consequential damages, punitive damages, interest and costs, and attorney's fees against Defendants.

### FOR A FIFTH CAUSE OF ACTION
**(Nuisance)**
**(Against All Defendants)**

132.  Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

133.  Plaintiff has a real property interest in the use and enjoyment of its property.

134.  Defendant Association owns the common areas in Pleasant Point.

135.  Defendant Directors of the Association own property in Pleasant Point.

136.    Defendant members of the ARC own property in Pleasant Point.

137.    Plaintiff has the right to use its property without substantial and unreasonable interference with its use and enjoyment of its property.

138.    Defendants' actions and decisions have effectively rendered the Plaintiff's property unbuildable, unusable, and yet subject to the dues and expenses of all other property owners in Pleasant Point Plantation.

139.    Such actions constitute a nuisance interfering with the Plaintiff's quiet use and enjoyment of its property and causing further damage to the Plaintiff in expenses, costs, dues, and fees for which it can receive no benefit.

140.    As a direct and proximate result of the nuisance created by the Defendants and suffered by the Plaintiff, the Plaintiff is entitled to actual damages in those amounts to be proven at trial.

141.    Such nuisance is willful, wanton, and intentional and subjects Defendants to the imposition of punitive damages in such amount as this Court and jury may award.

### FOR A SIXTH CAUSE OF ACTION
### (Civil Conspiracy)
### (Against All Defendants)

142.    Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

143.    The extensive allegations above will not be repeated verbatim, but they are incorporated in full.  Those allegations establish that the Defendants, *inter alia*: (a) acted in combination or agreement, and as part of a scheme with one another, (b) to commit an unlawful act or a lawful act in an unlawful manner, and (c) committed an

overt act in furtherance of their agreement or scheme, and (d) Plaintiff suffered damages as a direct result of the conspiracy.

144. The Defendants have worked together, both as agents of the Association <u>and</u> as individuals acting outside of the scope of their authority in pursuit of their own personal interests, in a concerted effort to harm Plaintiff.

A. For example, as set forth above, the purported ARC lacks the authority to act on behalf of the corporation because it is not comprised of directors of the corporation, as is required by South Carolina's Nonprofit Corporation Act.

1. Therefore, at all times relevant to this action, the members of the ARC were <u>each</u> acting individually, without lawful corporate authority, and *ultra vires*.

B. As another example, Defendant Sherbert is personally and individually motivated to prevent development of the Twin Oaks property. He has made this his personal mission for years.

145. Indeed, it was the combination of the Defendants' actions that effectuated the Defendants' scheme and amplified the damage to Plaintiff, including but not limited to by:

A. Requiring Plaintiff to jump through hoop after futile hoop, only to deny each of Plaintiff's efforts to use its property as it is entitled to do;

1. Each time that Defendants sent Plaintiff "back to the drawing board" to satisfy Defendants' arbitrary and unreasonable "requirements" for application approval, it cost Plaintiff time and money to revise plans;

26

B. Improperly attempting to convince the County to thwart the Plaintiff's development plans;

C. Necessitating the retention of legal counsel to navigate the Defendants' unreasonable, bad faith, and improper demands for plan changes in what should be a simple and straightforward process;

D. Forcing Plaintiff to pay assessments and fees that Defendants *knew* would result in no benefit whatsoever to Plaintiff;

E. Forcing Plaintiff to file an expensive lawsuit to resolve what could have (and should have) been resolved by the reasonable and good faith review of the Plaintiff's plans by the Association;

F. Otherwise causing Plaintiff to incur unnecessary and unreasonable costs in the (ultimately futile) pursuit of plan approval.

146. Defendants' unlawful and improper actions were accomplished by a combination or agreement of two or more persons, including: (1) the Defendant Association, (2) the purported but unlawful and unauthorized ARC, (3) each member of the purported ARC acting individually and without authority, (4) the Board of Directors, and (5) each member of the Board acting in a manner outside the scope of his or her lawful authority.

147. Further, Defendant co-conspirators have improperly used the power and resources of the Association in order to assert their personal agendas and wishes, and they have damaged Plaintiff through the use of the Association's resources to advance their improper personal goals.

148.    Plaintiff is entitled to an award of actual, consequential, special, and punitive

damages caused by Defendants' civil conspiracy.


**WHEREFORE**, Plaintiff requests that this Honorable Court grant to it the following

relief against Defendants:

1.  Actual and consequential damages;

2.  Declaratory judgments as set forth above;

3.  Pre-judgment and post-judgment interest;

4.  Attorney's fees and costs;

5.  Punitive damages;

6.  The costs of this action; and

7.  For all other such relief as is just and proper.

Plaintiff requests a trial by jury.

Respectfully submitted,

FORD WALLACE THOMSON LLC

/s/ Ian Ford
Ian S. Ford (Fed. Bar 9057)
    Ian.Ford@FordWallace.com
Ainsley F. Tillman (Fed. Bar No. 12847)
    Ainsley.Tillman@FordWallace.com
Robert E. Byrd (Fed. Bar No. 14367)
    Robert.Byrd@FordWallace.com
715 King Street | Charleston, SC  29403
(843) 277-2011 | www.FordWallace.com
*Attorneys for Plaintiff Bank of Newington*

May 6, 2025